IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JABRA DEIR, | ) | |
| | ) | CASE NO. 1:03CV2232 |
| Plaintiff, | ) | |
| | ) | JUDGE O'MALLEY |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| CITY OF MENTOR, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | Docket #31 |
| | ) | |

This case is before the magistrate judge on referral.  Pending is the motion of defendants, Martin Turek ("Turek"), John Vecchione ("Vecchione"), Josh Hauxhurst ("Hauxhurst"), Ronald Gunton,[1] Richard Slovenkay,[2] Richard Radtkin[3] ("Radtkin"), Joseph Samac, Charisse D. Bly as administrator of the estate of Leslie Duncan (collectively, "the individual defendants"), and the City of Mentor ("the city" or "Mentor") ("Def. mot."; Docket #31).[4] Plaintiff, Jabra Deir ("Deir"), opposes defendants' motion ("Pl. opp."; Docket #60).  For the reasons given below the magistrate judge recommends that the court grant defendants' motion in its entirety.

---

[1]  The Complaint incorrectly names Ronald Gunton as "Patrolman Gummon."

[2]  The Complaint incorrectly names Richard Slovenkay as "Patrolman Slovenky."

[3]  The Complaint incorrectly names Richard Radtkin as "Patrolman Radkin."

[4]  A motion by defendants to strike certain exhibits (Docket #53) and a motion by plaintiff for leave to file exhibits (Docket #58) remain pending in this case.  The court will resolve these motions after the referral to the magistrate judge has been terminated because they are not essential to the determination of the motion for summary judgment.

I.  Background

The court views the facts, as it must, in the light most favorable to the party opposing the motion.  Deir alleges or does not deny the following facts.

In the late evening of November 3, 2000 or the early morning of November 4, 2000 Deir was a customer of the Avenue Bar and Grill in Mentor.  After Deir had paid his bill he asked the waitress for his debit card, asserting that he had given it to her to pay his bill.  The waitress denied that she had Deir's debit card and claimed that Deir had paid cash.  After an argument, Deir demanded that the manager of the bar call the police so he could report the theft of the debit card.  The manager warned him that if he called the police, "You'll be sorry."

The manager called the police.  Turek and Vecchione responded to the call.  The officers allege, and Deir does not deny, that when they encountered Deir he had been drinking,[5] his speech was slurred,[6] and he was loud and profane.  The officers also allege, and Deir does not deny, that the officers warned Dier that he would be arrested if he did not calm down and stop using profanities.  Finally, the officers claim, and Deir does not deny, that Deir did not calm down and that while waiving his arms and holding a cigarette, he burned Turek's left arm with the lit end of the cigarette.

The officers arrested Deir and refused at that time to allow him to file a police report of the theft of his debit card.  Turek and Vecchione placed Deir in their patrol car and drove

---

[5] Deir asserts that he had no more than two beers to drink over the course of about 90 minutes.  The officers allege that Dier's eyes were bloodshot and he was swaying.

[6] Deir asserts that his speech was slurred because his "normal patterns of speech contains various moderately slurred-sounding consonants when pronounced with his born guttural and rolling language . . . ."  Pl. opp. at 3.

2

him to the police station.  They allege, and Deir does not deny, that while they were transporting Deir, he grew increasingly loud and abusive, threatening Turek and Turek's wife and children.

When the trio reached the police station, Deir was booked and bond was set.[7]  The charge on the booking sheet was given as "Lost Property – Disorderly Conduct."  [Mentor Police Department form], Deposition of Turek ("Turek depo,"; Docket #48), Exh. 4.  Deir was placed in a detoxification cell.

Deir asserts in his Complaint that while in the cell he began chanting and was told to stop chanting and be quiet.  The Complaint also alleges, "Suddenly several officers, believed to be Defendants Turek, Vecchione, Hauxhurst, Gummon [sic], Slovenky, [sic], Radkin [sic], and/or the deceased Sgt. Duncan entered the holding cell containing Plaintiff and forcibly assaulted Plaintiff, dragged him from the cell and otherwise forcibly assaulted Plaintiff."  Complaint at 4.  Deir alleges that as a result of this assault he suffered injuries to his elbow, wrist, hand, and shoulder, emotional injury, damage to his reputation and business and economic damages.

Deir was eventually charged with  persistent disorderly conduct and menacing.  On November 7, 2000 he pleaded no contest to a charge of disorderly conduct and was found guilty.  He was fined $100.00 plus court costs.

Deir filed this action on November 3, 2003.  His amended complaint asserts causes

---

[7] Radtkin claims that Deir was drunk and verbally abusive during booking.  Defendants also allege that Dier was loud and threatening in his cell and claim that when Deir was told to be quiet, he began beating his head against the wall.  Defendants further allege that the officers entered the cell to restrain Deir and prevent him from injuring himself.

of action pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging unreasonable seizure and deprivation of liberty.  Deir also asserts state actions for unlawful restraint,[8] assault-excessive force, battery-excessive force, intentional infliction of emotional distress, and reckless infliction of emotional distress.  Defendants deny Deir's claims and move for summary judgment.  Deir opposes defendants' motion.

## II.  Summary judgment standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986).  The substantive law of the case identifies which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact.  *Id.* at 323.  The nonmoving party must then show the existence of a material fact which must be tried.  *Id.* at 324.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966).  This includes taking the nonmoving party's

---

[8]  Defendants interpret Deir's third cause of action as brought pursuant to § 1983.  If it is, it adds nothing to his claims of unreasonable seizure and deprivation of liberty.  For this reason and because Deir cites § 1983 in his recitation of his first two causes of action only, the court interprets Deir's third cause of action as brought pursuant to state law.

4

uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  *See also Celotex,* 477 U.S. at 324.  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ,"  *id*., or by any other evidentiary material admissible at trial.  *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  There must be enough evidence that a reasonable jury could find for the nonmoving party.  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

### III.  Claims asserted pursuant to § 1983

Deir contends that defendants unreasonably seized him in violation of his rights

5

protected by the Fourth Amendment of the United States Constitution and deprived him of liberty in violation of the due process clause of the Fourteenth Amendment.  He brings these claims pursuant to § 1983.

Section 1983 enables individuals to "interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).  A plaintiff must establish two elements to state a claim under § 1983.  First, the offending conduct must have been committed by a person acting under color of state law.  Second, the offending conduct must have deprived plaintiff of a right protected by the federal constitution or arising under federal law.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  A plaintiff in a § 1983 action may obtain injunctive or declaratory relief, may recover compensatory damages, and in some circumstances may recover punitive damages.  *See* 28 U.S.C. §§ 2201-2202; *Carey v. Piphus*, 435 U.S. 247 (1978); *Smith v. Wade*, 461 U.S. 30 (1983).

Deir claims deprivations of rights by both local government entities and by particular local government employees in their official and individual capacities.  Official capacity suits are construed as brought against the entity itself because a judgment against an individual in his official capacity imposes liability on the entity he represents. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992).  Deir's actions against the particular government employees in their official capacities, therefore, are absorbed into his actions against Mentor.

Defendants move for summary judgment as to both of Deir's claims brought pursuant to § 1983.  They contend that Dier's plea of no contest and the subsequent entry of judgment against him for disorderly conduct bars liability pursuant to § 1983 for unreasonable seizure or deprivations of liberty related to Dier's arrest.  Because the tests for liability for the individual defendants and the city are different, liability as to these defendants will be addressed separately.

    1.    *Individual defendants*

Liability may be imposed pursuant to § 1983 upon officials personally involved in an infringement upon a right protected by federal statute or the constitution.  *Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir. 1994).  Liability cannot be based merely upon a failure to exercise the right to control other employees:

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d at 869, 874 (6th Cir, 1982)).

Government officials performing discretionary functions are protected against liability pursuant to § 1983 by a qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982); *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995).  The measure is an objective one.  The court looks to whether the official's actions

7

were objectively reasonable in light of clearly established law at the time of the alleged

violation. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987).  An official's actions are not

objectively reasonable if law existing at the time of the alleged violation makes apparent the

unlawfulness of the official's acts.  *Id.* at 640.

Defendants cite *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988), as governing the

outcome in this case.  In *Walker* plaintiffs brought actions against defendant officers for false

arrest and false imprisonment, substantially the same charges which Deir brings against

defendants in this case.  Also in *Walker* plaintiffs pleaded no contest to charges of disorderly

conduct and were subsequently found guilty by the court.  In its opinion on appeal, the Sixth

Circuit found as follows:

> Having voluntarily entered these pleas in state court and having been found guilty of
> the charges against them, are plaintiffs now estopped from seeking damages resting
> upon claims based upon alleged false arrest and false imprisonment?
>
>> A state court judgment must be given the same preclusive effect in federal court
>> that it would be given in the courts of the rendering state. *Migra v. Warren City
>> School District Board of Education,* 465 U.S. 75, 85, 104 S. Ct. 892, 898, 79
>> L. Ed.2d 56 (1984); *City of Canton v. Maynard,* 766 F.2d 236, 237 (6th Cir.
>> 1985) (per curiam); *Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140,
>> 1144 (6th Cir. 1985) (per curiam).  This principle applies to civil rights actions
>> under section 1983 with respect to issues actually litigated (collateral estoppel
>> or issue preclusion) and issues which could have been but were not litigated in
>> the state court proceeding (res judicata or claim preclusion).  *Migra,* 465 U.S.
>> at 81-85, 104 S.Ct. at 896-98; *Maynard,* 766 F.2d at 238.  Giving preclusive
>> effect to state court judgments is, however, inappropriate "where the party
>> against whom an earlier court decision is asserted did not have a full and fair
>> opportunity to litigate the claim or issue decided by the first court."  *Allen v.
>> McCurry,* 449 U.S. 90, 101, 101 S. Ct. 411, 418, 66 L. Ed.2d 308 (1980);  *see
>> also Haring v. Prosise,* 462 U.S. 306, 313, 103 S. Ct. 2368, 2373, 76 L.Ed.2d
>> 595 (1983);  *Thorburn,* 758 F.2d at 1144.

*Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 197 (6th Cir. 1987).

8

Res judicata is not applicable in this case because the issue here is not the same as in the state's criminal actions against plaintiffs. *Id.* at 197. Collateral estoppel principles, however, may apply if Walker and Turner in the state proceeding had a "full and fair opportunity to litigate" the issues involving whether defendants, or either of them, falsely arrested and/or falsely imprisoned plaintiffs. Plaintiffs' vindication by acquittal would, of course, have a direct bearing on whether either defendant had falsely arrested (or falsely imprisoned) plaintiffs. "A false arrest is one means of committing a false imprisonment, but . . . a distinction has been drawn between the two in that a false arrest must be committed under assumption of legal authority . . . ." 35 C.J.S. *False Imprisonment* § 2 (1960). Here the nature of the claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs. *See Whirl v. Kern,* 407 F.2d 781, 790 (5th Cir. 1968), *cert. denied,* 396 U.S. 901, 90 S. Ct. 210, 24 L. Ed.2d 177 (1969); *Alter v. Paul,* 101 Ohio App. 139, 135 N.E.2d 73 (1955); *Martell v. Chisholm,* 384 F. Supp. 1224 (W.D. Pa. 1974), *aff'd without op.,* 517 F.2d 1398 (3d Cir. 1975).

The Supreme Court has held that police officers' defense of "good faith" and "probable cause," which is available in common-law claims of false arrest and false imprisonment made against them, "is also available to them in the action under § 1983." *Pierson v. Ray,* 386 U.S. 547, 557, 87 S. Ct. 1213, 1219, 18 L. Ed.2d 288 (1967); *see also Whirl,* 407 F.2d at 790. We hold that the pleas in state court made by defendants and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause. . . . Insofar, then, as the cause of action under § 1983 is based on claims of false arrest and/or false imprisonment, or unlawful detention, plaintiffs are estopped from pursuing these claims for the reasons indicated.

*Walker v. Schaeffer*, 854 F.2d 138, 142-43 (6th Cir. 1988) (footnotes omitted).

Having pleaded no contest to a charge of disorderly conduct and having been found guilty on that count by the court, Deir is estopped from asserting a cause of action pursuant to § 1983 for unreasonable seizure or deprivations of liberty related to Dier's arrest. For this reason the magistrate judge recommends that the court grant defendants' motion for summary judgment as regards Deir's causes of action brought pursuant to § 1983 against the individual defendants.

9

2.      *The city*

Local government bodies may be found liable pursuant to § 1983 for constitutional

violations.  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Section 1983

does not, however, "impose liability vicariously on governing bodies solely on the basis of the

existence of an employer-employee relationship with a tortfeasor."  *Monell v. Department of*

*Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978).  Rather, a plaintiff must show

that the municipality itself is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115,

122 (1992); *Doe v. Claiborne County, Tenn*., 103 F.3d 495, 507 (6th Cir. 1996).  Local

government entities can be held liable only where a plaintiff can establish that "an officially

executed policy, or the toleration of a custom" within the municipality causes the deprivation

of a constitutionally protected right.  *Doe*, 103 F.3d at 507 (citing *Monell*, 436 U.S. at 690-91).

A "custom" for these purposes "must reflect a course of action deliberately chosen from

among various alternatives."  *Doe*, 103 F.3d at 508 (citing *City of Oklahoma v. Tuttle*, 471

U.S. 808, 823 (1985)).  Where the accused policy or custom is facially lawful, the plaintiff

"must demonstrate that the municipal action was taken with 'deliberate indifference' as to its

known or obvious consequences.  A showing of simple or even heightened negligence will not

suffice."  *Brown*, 520 U.S. at 407 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Alleged deficiencies in training government personnel must meet this standard, showing that

the alleged failure to train was the result of deliberate indifference to the known or obvious

consequences of that failure.  *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

Deir's causes of action pursuant to § 1983 against the city fail for two reasons.  First,

10

as has already been shown, Deir is estopped from asserting in this court that he was seized or held without probable cause. Consequently, Deir cannot show that the city was responsible for committing a constitutional violation against him for unreasonable seizure or deprivations of liberty related to his arrest. Second, although Deir cites some evidence related to the issue of whether Mentor tolerates the use of excessive force against suspects, he cites no evidence related to the issue of whether Mentor tolerates arrest and imprisonment of suspects without probable cause. He cannot show, therefore, a custom or policy which caused the deprivation of his constitutional rights against unreasonable seizure and unreasonable detention. Either of these is sufficient to bar Deir's § 1983 claims against the city. The magistrate judge recommends, therefore, that the court grant defendants' motion for summary judgment as regards Deir's causes of action brought pursuant to § 1983 against Mentor.

### IV.  State law claims

Deir asserts state law claims in tort for unlawful restraint, assault-excessive force, battery-excessive force, intentional infliction of emotional distress, and reckless infliction of emotional distress against all defendants. Defendants raise a defense of qualified immunity against the state law claims. As the analysis of immunity differs for the individual defendants and for the city, these defenses will be examined separately.

A.    *Immunity and the individual defendants*

The individual defendants claim immunity pursuant to Ohio Rev. Code § 2744.03(A)(6) ("2744.03(A)(6)"), which provides:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or

proprietary function, the following defenses or immunities may be asserted to establish nonliability:

*          *          *

(6) . . . [T]he employee [of a political subdivision] is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

In effect, § 2744.03(A) creates a presumption of immunity which may be overcome only by showing that one of the exceptions at § 2744.03(A)(6) applies. *Cook v. City of Cincinnati*, 103 Ohio App. 3d 80, 90, 658 N.E.2d 814, 820 (1995).

Deir does not argue that any defendant's acts were manifestly outside the scope of his employment or official responsibilities or that any defendant is liable because liability is expressly imposed upon him by a section of the Ohio Revised Code.  Thus, Deir can defeat the individual defendants' assertion of immunity only if he presents sufficient evidence to allow a reasonable jury to conclude that acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

Under Ohio law the key terms used in § 2744.03(A)(6)(b) are defined as follows;

"Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified.  "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. . . . [W]anton misconduct is the failure to exercise any care whatsoever . . . "[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."  Such

12

perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury.

*Cook*, 103 Ohio App. 3d at 90-91, 658 N.E.2d at 821 (citations omitted).

Deir presents the following admissible evidence regarding his alleged mistreatment while he was incarcerated in the Mentor police station:

A. No.

Q. You never said anything to the officers when they were coming in?

A. No.

Q. Other than, only for God?[9]

A. Right.

Q. You didn't try to resist them?

A. No.

Q. You were handcuffed and then you were maced.

A. Yes, sir.

Q. And then what happened?

A. I was left there handcuffed, suffocating. The door closed, and they walked away.

Q. Okay, so you were maced and handcuffed, they left you in the room, they closed the door and walked out.  Was anybody else in the room with you?

A. God.

Q. Any other person in the room with you?

A. No.

---

[9]  When told to kneel, plaintiff responded that he would kneel only for God.

13

Q.      How long were you left like that?

A.      Let me tell you what I recall.  I remember moments or hours or whatever later, when I came around, I heard mattresses being thrown to the ground.
        I know, I know one thing for a fact, I seen a light, I heard my father's voice, I heard my baby

                            *            *            *

A.      Yes, sir.

Q.      All right.
        And you are telling the truth?

A.      Yes, sir.

Q.      The next thing you remember after pouring the water down and not drinking it, after having this near death experience, what happened?[10]

A.      An officer came, opened the window and said to me, Mr. Deir, what do you want to tell me, I will take a police report?

Q.      And then what did you say?

A.      Too late.

Q.      Okay, and then what happened?

A.      Then they came, opened the door, told me to go across the hall to take the pictures, and they had me – called my wife, obviously.

Q.      Did you talk to your wife from the cell?

A.      Very briefly, sir.

Q.      Okay, so you got your one phone call?

A.      I tried – very briefly, sir.

---

[10]  Plaintiff testified that he was given water which he threw in the garbage, that he died, that the officers found him "almost leaving his body" and that the officers dragged him from his cell.

14

Q.      When?

A.      After all this happened.

Q.      Oh, so this was after that, you talked to your wife?

A.      Yes.

Deposition of Deir, Pl. opp., Exhs. Y, N.  Deir also presents evidence related to the injuries which he says resulted from his mistreatment at the police station.  He presents evidence of posterolateral disc herniation between the seventh and eighth thoracic vertebrae, posterolateral disc herniation between the fifth lumbar and first sacral vertebrae, shoulder injuries, numbness in his right thumb, chest pains and difficulty breathing, and watery eyes.[11]

Deir presents no evidence linking any named individual defendant to the mistreatment alleged above.  He presents no evidence linking an injury with his incarceration.  Without evidence sufficient to allow a reasonable juror to implicate a particular named defendant in the mistreatment Deir alleges *and* to overcome the presumption of immunity to which the individual defendants are entitled, Deir cannot resist the individual defendants' motion for summary judgment.  For this reason the magistrate judge recommends that the court grant defendants' motion as regards Dier's state causes of action against the individual defendants.

*B.  Immunity and the city*

Deir also asserts state causes of action in tort for unlawful restraint, assault-excessive

---

[11]    Again, it is not clear that all of this evidence is admissible, and defendants have objected to the admissibility of some evidence.  Moreover, Exhibit S, ostensibly related to Deir's treatment for esophageal and nasal damage allegedly resulting from the use of mace, and Exhibit X, attributing in part Deir's later myocardial infarction to his injuries at the Mentor police station, were not included in Deir's appendix of exhibits.  The pocket which should have contained Exhibit X was marked, "Previously submitted to your honor."

15

force, battery-excessive force, intentional infliction of emotional distress, and reckless infliction of emotional distress against Mentor.  In the state of Ohio, when a political subdivision[12] asserts immunity from liability against tort claims, the court must perform a three-tiered analysis to determine whether that assertion of immunity is valid.  *See Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28, 697 N.E.2d 610, 614 (1998).  First, the court turns to Ohio Rev. Code § 2744.02(A)(1), which divides the functions of political subdivisions into governmental functions and proprietary functions.  Ohio Rev. Code § 2744.02(A)(1) also states the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Ohio Rev. Code 2744.01(C)(2)(a)-(c) provides that police services, suppression of disturbances, and law enforcement are governmental functions.

Second, the court consults Ohio Rev. Code § 2744.02(B), which provides exceptions to this general rule.  Ohio Rev. Code §§ 2744.02(B)(1)-(5) allow liability for political subdivisions under these circumstances:

> (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. . . .

> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the

---

[12]  A county "or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state" is a political subdivision in Ohio.  Ohio Rev. Code § 2744.01(F).

Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads . . . .

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, . . . but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code . . . .

If one of the exceptions to municipal immunity at §§ 2744.02(B)(1)-(5) applies, the political subdivision is potentially liable for the alleged injury.  In that case, the court looks to Ohio Rev. Code § 2744.03 to determine whether the municipality has any additional defenses to liability.

In the instant case none of the exceptions at §§ 2744.02(B)(1)-(4) applies to Deir's allegations of mistreatment, and Deir does not cite any section of the Ohio Revised Code which would impose liability on the city pursuant to § 2744.02(B)(5).  Thus, Deir cannot overcome the city's assertion of immunity against his state law claims.  For this reason the magistrate judge recommends that the court grant defendants' motion for summary judgment as regards Deir's state law claims against Mentor.

V.  Conclusion

17

For the reasons given above the magistrate judge recommends that the court grant defendants' motion for summary judgment in its entirety.


Date:  June 20, 2005                    /s/Patricia A. Hemann
                                        Patricia A. Hemann
                                        United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).