## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JABRA DEIR, | : | Case No. 1:03-cv-2232 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | OPINION AND ORDER |
| CITY OF MENTOR, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter arises on Defendants' Motion for Summary Judgment[1] (Doc. 38), in which the Defendants seek dismissal of all counts.  Plaintiff filed an opposition (Doc. 60) and the Defendants filed a reply (Doc. 54).  The Court referred this matter to Magistrate Judge Patricia Hemann for preparation of a Report and Recommendation ("R&R"), which was entered on June 20, 2005 (Doc. 71).  The R&R recommends that the Court grant Defendants' motion in its entirety.  The Plaintiff filed written objections to the R&R (Doc. 75).  Thereafter, Defendants submitted a Motion to Strike Plaintiff's Objections to the R&R, or in the alternative, Reply to Plaintiff's Objections (Doc. 76).[2]  As requested by Defendants, their Motion to Strike will be viewed as Defendants' response to Plaintiff's objections.

---

[1]   The Defendants' motion was filed on behalf of Defendants Turek, Vecchione, Hauxhurst, Gunton, Slovenkay, Radtkin, Samac, Estate of Duncan c/o Bly, and the City of Mentor.  Its actual title includes each of these names.  For ease of reference, the Court's references herein are limited to "Motion" or "Motion for Summary Judgment."

[2]   The Motion to Strike was premised on the fact that Plaintiff, who is acting *pro se*, did not sign the objections himself; Plaintiff's wife signed his name, followed by her own initials.  As noted in the Court's earlier order on this issue, because Plaintiff, who was unable to sign the objections as a result of his incarceration on unrelated assault charges, had given his wife a Power of Attorney authorizing her to execute documents in his name, the Court accepted the filing and denied the Motion to Strike.

For the reasons outlined below, the Court **ADOPTS** the R&R as its own.  Accordingly, the Defendants' Motion for Summary Judgment (Doc. 38) is **GRANTED** and the Plaintiff's case is **DISMISSED with prejudice**.[3]  In light of the Plaintiff's objections and the Court's view that certain issues are worthy of additional discussion, however, the Court finds it necessary to articulate its conclusion further.

### I.      FACTUAL BACKGROUND

Both the R&R (Doc. 71) and this Court's previous *Memorandum Opinion and Order* (Doc. 55) accurately set forth the relevant factual and procedural background. The Court adopts those articulations of the factual and procedural background.  To the extent necessary, the Court will elaborate on factual and procedural issues worthy of additional consideration.

### II.     DISCUSSION

The Defendants argue that *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1998), requires dismissal of Plaintiff's federal claims, brought pursuant to 42 U.S.C. §1983, in which he asserts he was seized and arrested without probable cause.  Defendants assert that the state court's finding of guilt on the underlying disorderly conduct charge necessarily established probable cause for the arrest, as was the case in *Walker*. Following *Walker*, Defendants conclude that the existence of probable cause estopps Plaintiff from asserting his § 1983 claims.   Defendants further argue that, pursuant to *Monell v. New York City Dept.*

---

[3]      The Court also considers herein and, for the reasons articulated below, **DENIES** Defendants' *Motion to Strike Certain Exhibits* (Doc. 53) and **GRANTS** *nunc pro tunc* to the day it was filed *Plaintiff's Motion for Leave of Court in Order to Provide Authentication of Exhibits Listed in Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment* (Doc. 58).

2

*of Soc. Servs.,* 436 U.S. 658 (1978), the federal claims <u>against the City of Mentor</u> fail because the Plaintiff has presented no evidence of an official policy or custom of arresting or tolerating the arrest of individuals in the absence of probable cause.

The state law claims include unlawful restraint, excessive force (assault), excessive force (battery), intentional infliction of emotional distress, and reckless infliction of emotional distress. Defendants argue that Plaintiff has not overcome the presumption of statutory immunity (Ohio Revised Code § 2744) granted to the individual officers and the City of Mentor in connection with these claims and that they must, therefore, be dismissed as well.

Plaintiff opposes Defendants' motion as to his federal claims on the ground that he did not plead guilty to the disorderly conduct charge. Instead, he claims that he pled "no contest," which he believes preserved his right to attack the constitutional validity of his arrest. Plaintiff also presents various documentary exhibits, which he believes demonstrate that the City of Mentor has a policy and custom of tolerating constitutional violations.

**A.     <u>Preliminary Motions</u>.**

Before analyzing the substance of Defendants' Motion for Summary Judgment, the Court first addresses *Defendants' Motion to Strike Certain Exhibits* ("Motion to Strike") (Doc. 53) and *Plaintiff's Motion for Leave of Court in Order to Provide Authentication of Exhibits Listed in Plaintiff's Brief in Opposition to Defendants' Motion For Summary Judgment* ("Motion for Leave") (Doc. 58).

In sum, Defendants' Motion to Strike requests that exhibits C, F, J, L, M, R, S, T, U, V, W, X, DD, EE, Photo 1, Photo 2, and Photo 3 from Plaintiff's opposition brief be stricken pursuant to Federal Rule of Civil Procedure 56(c) and (e), mainly because they are either hearsay or not properly authenticated.

3

While Defendants seek to strike the exhibits based on Rules 56(c) and (e), these provisions do not specifically provide for challenges to evidence or exhibits; it only addresses what materials are appropriate for consideration in a motion for summary judgment. The only procedural rule with which this Court is aware that discusses a court's authority to strike items from the record is Federal Rule of Civil Procedure 12(f). Under Rule 12(f), a court may order stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The rule permits striking matters only from pleadings. Therefore, Defendants' Motion to Strike must be denied. Having said that, however, it remains true that the Court should not consider materials which are tendered in a manner not authorized by the rules of evidence. Hence, while the Court declines to strike any matters from the record, it will not consider items for which a proper evidentiary foundation either has not or cannot be laid.

Plaintiff's Motion for Leave requests an extension of twenty (20) additional days in which to attempt to acquire the appropriate affidavits and authentication of documents. Plaintiff's motion is granted *nun pro tunc* to the day it was filed; Plaintiff's supplemental submission as to these matters is, thus, accepted as timely filed. Again, to the extent any exhibits continue to lack the requisite authentication, the Court will consider them for what they are worth.

### B.  The Magistrate Judge's Report and Recommendation.

Upon examining the evidence and papers submitted to the Court, the Magistrate Judge recommends granting Defendants' motion in its entirety. As to the federal claims, she agrees with Defendants that *Walker* controls and that Plaintiff is estopped from asserting § 1983 claims for unreasonable seizure or deprivations of liberty related to his arrest. She also recommends, in the alternative, dismissal of the federal claims against the City of Mentor because Plaintiff has presented no evidence establishing,

4

or even suggesting, that the City has a policy or custom of tolerating these particular constitutional violations, as is required by *Monell*.

As to the state law claims, the R&R concludes that the City and the individual Defendants are entitled to qualified immunity pursuant to Ohio Revised Code § 2744 because the alleged actions do not give rise to an exception to the immunity provided under that statute.[4]

### C. Plaintiff's Objections to the R&R.

In sum, Plaintiff's objections merely reassert the arguments made in his opposition brief.  First, he objects to the Magistrate Judge's reasons for dismissing the federal claims and argues that his inability to file a police report regarding his lost debit card should not have been ignored in the analysis. Next, Plaintiff argues that the City's failure to train its police officers on diversity issues led to his allegedly unlawful arrest. He argues that his slurred speech and aggressive behavior are the result of his cultural heritage, and not intoxication.[5]

Plaintiff cites *Canton v. Harris,* 489 U.S. 378 (1989), for the proposition that inadequate police training can serve as a basis for a § 1983 claim.  He asserts that, if the officers had been properly trained, they would have known that slurred speech, the waving of his hands, his touching of the officers, and his loud and aggressive manner were normal for individuals with a Mediterranean background and would, accordingly, likely not have arrested him based on that conduct.  Plaintiff also asserts that the City has a

---

[4]    The R&R agrees with Defendants' characterization of the claims (*i.e.* Counts One and Two are the federal claims while the rest are state claims).  The Court weighs in on these characterizations below.

[5]    The Court did not note any unusual slurring of his speech during the case management conference, however.

5

custom of tolerating constitutional violations such as unlawful arrests and the use of force following such arrests.  In support of this assertion, Plaintiff proffers a small number of complaints against Mentor Police Department officers for allegedly unacceptable conduct, aggressive behavior, and personal injury to detainees.  While each complaint was determined to be "unfounded," and some date back close to twenty (20) years, Plaintiff argues that they establish that the City has a custom of tolerating a variety of constitutional violations by its officers.

> **D.**     **Summary Judgment Standard.**

The Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56.  Rule 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the  matters stated therein . . . .  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a

7

scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

      **E.**     <u>**Analysis**</u>.

      Plaintiff has asserted both federal and state law claims.  The Court defines the claims slightly differently than did Defendants' motion and the R&R, however.  The federal claims assert violations of the Fourth and Fourteenth Amendments, and are brought pursuant to 42 U.S.C. § 1983.  They include claims of unreasonable seizure (Count One), deprivation of liberty (Count Two), and unlawful restraint (Count Three),[6] all premised on Plaintiff's claim that he was arrested without probable cause.   While Plaintiff's claims of assault-excessive force (Count Four) and battery-excessive force (Count Five) do not reference § 1983, considering that Plaintiff is *pro se* and such claims can be asserted both as federal and state claims, the Court construes them as <u>both</u> federal and state claims.   The claims that are solely based on state law are intentional infliction of emotional distress (Count Six), and reckless infliction of emotional distress (Count Seven).

      **1.**     **Unreasonable Seizure, Deprivation of Liberty, and Unlawful Restraint (Counts One, Two, and Three).**

      The Court agrees with, and adopts, the R&R's conclusion that the Plaintiff's federal claims of unreasonable seizure, deprivation of liberty, and unlawful restraint should be denied.  In the interest of thoroughness, however, the Court expands on the R&R's analysis.

      There are two essential elements of a § 1983 claim:

---

[6]     While Count Three does not <u>expressly</u> reference § 1983, as do Counts One and Two, the Court construes it as asserting a claim of false arrest under both federal and state law.

8

      (1)      there must be a deprivation of the plaintiff's rights, privileges, or immunities secured by the Constitution and laws of the United States; and

      (2)      the plaintiff must allege that the defendants deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."

*Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir 1982).  Because the Defendants include police officers and the City itself, the second prong of the test easily is met.  In order for the Plaintiff to establish the first element, he must demonstrate that the seizure, arrest, and restraint occurred without probable cause. *See  Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988).

*Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1998)*,* provides guidance.  In *Walker*, the plaintiff pled "no contest" to a disorderly conduct charge and, thereafter, was convicted.  He later filed a § 1983 action for false arrest and false imprisonment against the police officers who arrested him.  As noted by the Magistrate Judge in this case, the underlying charge, and subsequent § 1983 claims, are substantially the same as those in *Walker*.

The Sixth Circuit held in *Walker* that the state court plea, and the finding of guilt in connection therewith, estopped the plaintiff from asserting in federal court that his arrest and imprisonment were without probable cause.  In the present case, Plaintiff's opposition brief focuses on the fact that he pled "no contest," as opposed to "guilty," to the charge of disorderly conduct.  While Federal Rule of Evidence 410 provides that a plea of "no contest" is not admissible in a civil or criminal proceeding against a defendant who made the plea, it only applies to subsequent proceedings where he is the *defendant*.  *Walker,* 854 F.2d at 143.  "Rule 410 was intended to protect a criminal defendant's use

9

of the *nolo contendere* ("no contest") plea to defend himself from future civil liability." *Id.*  The present

case does not invoke that rule, however, because the Plaintiff, who pled "no contest," is not a defendant

in this case.  Whether he pled "guilty" or  "no contest," which is disputed between the parties, has no

bearing in this case.  The uncontested fact is that Plaintiff <u>was convicted</u> of disorderly conduct.  That fact

necessarily establishes probable cause.  Plaintiff is, therefore, barred from asserting that the Defendants

acted without probable cause, whether he makes that assertion under federal law or state law.

Being unable to show that the officers acted without probable cause, Plaintiff cannot establish the

first element of a § 1983 claim premised on his arrest.  As such, Plaintiff's federal claims of unreasonable

seizure (Count One), deprivation of liberty (Count Two), and unlawful restraint (Count Three) cannot

stand and must be dismissed.[7]

### 2. Assault-Excessive Force and Battery-Excessive Force (Counts Four and Five).

While Defendants' motion, and the Magistrate Judge's R&R, treat Plaintiff's excessive force

assertions as governed by state law, the Court views them as <u>both</u> federal and state claims for the benefit

of the Plaintiff, who is *pro se*.  The Court will, therefore, analyze these claims under both federal and state

law.

The Court first addresses the <u>federal claims</u> of excessive force (assault) and excessive force

---

[7]     While Defendants have also asserted qualified immunity as to the false arrest claims, the
        Court need not address that issue because those claims must be dismissed for other
        reasons.

10

(battery).[8]  The Defendants assert they are entitled to qualified immunity in connection with these claims.

A qualified immunity analysis in this context requires a two pronged inquiry.  A plaintiff must show that:

1)      the officer violated Plaintiff's constitutional right to be free from the use of excessive or

unreasonable force; and

2)      the constitutional right was clearly established.

*Saucier v. Katz,* 533 U.S. 194 (2001).  Excessive force claims are generally analyzed under the Fourth

Amendment's objective reasonableness standard.  In determining whether an officer used excessive force

(and, therefore, violated a constitutional right) during a plaintiff's arrest and/or imprisonment, the question

is whether a "reasonable officer" would have undertaken the same actions under similar circumstances.

In other words, Plaintiff must present evidence to "demonstrate that a hypothetical reasonable officer

would have known that his actions, under the circumstances, were objectively unreasonable."  *Lyons v.*

*City of Xenia,* No. 03-3282, 2005 U.S. App. LEXIS 16034, at *24 (6th Cir. Aug. 4, 2005) (citing

*Scott v. Clay Cty,* 205 F.3d 867, 877 (6th Cir. 2000)).  If unable to do so, the defendant-officers are

entitled to qualified immunity.

Plaintiff's evidence in this regard is insufficient; it simply does not establish that a constitutional

violation occurred.  As mentioned in Defendants' motion, and unrebutted by Plaintiff, Patrolman

Vecchione had no contact with Plaintiff after the initial arrest and Patrolman Gunton had no contact with

Plaintiff at all.  As admitted in Plaintiff's deposition, Sergeant Duncan only had contact with Plaintiff after

Plaintiff's release.  *See* Deir Depo. at 118-120.

---

[8]      Resolution of the state law claims of excessive force (assault) and excessive force
(battery) is outlined in Section II-E-4, *infra*.

11

As for the other officers – Turek, Hauxhurst, Slovenkay, Radtkin, and Samac – Defendants assert that they are entitled to qualified immunity because the evidence produced does not show that they acted "unreasonably" under the circumstances.  While Plaintiff argues at length in his objections that the officers overreacted when they arrested him, he does not deny that he had been drinking, that his speech was slurred, that he was aggressive in his speech and movements toward the officers, and that he actually burned one of the officers with his cigarette.[9]  Critically, he also does not assert that the officers used excessive force in effectuating the arrest.[10]  Instead, the Plaintiff claims that the improper force used against him occurred <u>after</u> he was booked.  As to this time-frame, however, Plaintiff presents virtually no evidence that the use of force upon him was unreasonable.

First, Plaintiff concedes that he did not comply with a number of the officers' orders to him while being booked, that he refused to stop making loud noises, including the repeated screaming of obscenities, despite being asked to do so, and that he chanted continuously and banged his own head on the cell walls or door.  Because of this conduct, the officers testified that they felt it was necessary to restrain Plaintiff, primarily to prevent him from injuring himself.  The officers also testified that, when attempting to restrain Plaintiff with a straightjacket, Plaintiff continued to be combative and belligerent and struggled with the officers and even broke away from them at one point.  It was this conduct that led Officer Turek to use one shot of pepper spray on Plaintiff and ultimately led to his being forced to the

---

[9]     Again, Plaintiff asserts that his conduct is explained by his cultural background, not by alcohol or anger.

[10]    There were many witnesses to these events, none of whom has indicated that the officers used force.

12

ground and handcuffed.  The Plaintiff offers virtually nothing to rebut this testimony.[11]  In his own deposition, the Plaintiff claims that he was "maced" and handcuffed upon booking, though he does not say by whom, and left in his cell alone.  He says that it was at some point after that that he was beaten and dragged from his cell.  He claims he passed out during this period and actually died, but later returned to his body.

While Plaintiff does not recall the alleged beating, or name any officers who allegedly were involved in it, he surmises that it happened based both on his "near death experience" and the fact that when he was taken to the hospital for treatment not long after his arrest the medical records show that he had, in fact, sustained injuries.  Plaintiff asserts, moreover, that the fact that he suffered a heart attack some months later lends credence to his contention that his mistreatment by the Mentor Police Department was both severe and traumatic to him.

While it is true that, in some cases, evidence of substantial injury manifesting itself in close proximity with police contact may be sufficient to overcome summary judgment in favor of the officers, even where a plaintiff cannot recall the precise nature of the events, this is not such a case.  Despite Plaintiff's characterization of them, the medical records do not show severe, or even substantial, injuries to Plaintiff; indeed, they show injuries consistent with the officers' description of the events.  The medical

---

[11]  The Plaintiff also does not even attempt to rebut the sworn testimony that Officers Radtkin and Samac had <u>no</u> involvement in this altercation and that Officer Hauxhurst's contact with Plaintiff did not occur until the struggle was essentially over and Plaintiff was being handcuffed.  In light of the undisputed record, the only question the Court must address is whether the actions of Officer Turk and Slovenkay were objectively reasonably as a matter of law.

records show abrasions to the eye consistent with the use of pepper spray,[12] bruising on the wrists consistent with the forced application of handcuffs, and other bruising consistent with bringing Plaintiff to his knees in an effort to subdue him.  Plaintiff was treated with eye drops, ice, and ibuprofen, and released from the hospital about two hours after he arrived.

As to Plaintiff's subsequent heart attack, the records simply do not support the connection Plaintiff attempts to draw between his altercation with the officers and that medical condition.  While Plaintiff asserts that Dr. Zarandy attributes Plaintiff's subsequent heart attack to the distress suffered from the incident (Doc. 60 at 5), that is not what the doctor says.  Dr. Zarandy's letter, dated February 22, 2001, only states that Plaintiff suffered a heart attack and would not be able to participate in court proceedings.  *See* Exhibit W, Doc. 60.  It does not opine on the causes of the Plaintiff's heart attack.  Dr. Smith's letter to Mr. Foy, dated October 19, 2004, similarly does not conclude that the heart attack was caused by the incident.  It states that, "although he has multiple risk factors for coronary artery disease, *which is the likely cause of* his presumed myocardial infarction (heart attack), one cannot rule out emotional stress as a contributor to the event."  Exhibit W, Doc. 60.  This letter clearly does not conclude that his incarceration caused the heart attack.  In fact, the letter states that the heart attack is likely to be attributed to other causes (*i.e.* multiple risk factors for coronary artery disease).  Furthermore, Plaintiff admits that he has a severe family history of heart attacks.  *See* Deir Depo. at 70.  The evidence of injury presented in this case is simply not sufficient to lead the Court to conclude that the force used

---

[12]     On this point the relatively minor extent of these abrasions is consistent with the officers' testimony that little pepper spray was used and that it was quickly washed out with water.

14

against the Plaintiff was unreasonable.

Based on the undisputed evidence in the record – *i.e.*, that 1) regardless of his explanation for his conduct, Plaintiff was intoxicated, belligerent, rude and uncooperative when arrested; 2) regardless of his explanation for why he did it, Plaintiff concedes that while in his cell he both chanted and banged his head; 3) the officers' uncontradicted testimony was that most of the Defendants had no physical contact with Plaintiff; 4) the officers' uncontradicted testimony is that they struggled with Plaintiff in the course of trying to restrain him so that he would cease his disruptive activity and to prevent him from hurting himself; 5) the medical records Plaintiff submitted show injuries consistent with the struggle the officers described; and 6) Plaintiff does not recall how he received the injuries, or who inflicted them[13] – the Court finds that the officers' use of force was objectively reasonable under the circumstances. Thus, the Court concludes that, while some force clearly was used on Plaintiff, no reasonable juror could conclude that the level of force was constitutionally impermissible.   The evidence presented by the Plaintiff simply cannot show that a reasonable officer would have believed the officers' actions were unreasonable under the circumstances.   Furthermore, "an official would be immune if officers of reasonable competence could disagree on whether the conduct violated Plaintiff's rights." *Gossman v. Allen,* 950 F.2d 338, 341 (6th Cir. 1991) (emphasis added) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).  For these reasons, Plaintiff's federal claims of excessive force under § 1983 (Counts Four and Five) fail and must be dismissed.

### 3.    Plaintiff's *Monell* Claims

---

[13]    While Plaintiff attributes this fact to his near death experience, it is also consistent with the officers' testimony that Plaintiff was extremely intoxicated when he was arrested.

15

As noted above, Plaintiff also asserts federal claims against the City in connection with both his false arrest and excessive force claims.[14]  He asserts that a claim can be submitted against the City under *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978), because he alleges the City of Mentor has a custom or policy of violating or tolerating violations of constitutional rights by the officers, particularly by allowing mistreatment of individuals during arrest and the use of force against detainees.  While there are a number of weaknesses in Plaintiff's showing on his *Monell* claims, the most obvious is his inability to establish that any custom or policy (to the extent one existed) actually caused a deprivation of his constitutional rights.  *Id.* 436 U.S. at 690-691.

As discussed above, Plaintiff is estopped by his conviction from asserting that his arrest was constitutionally impermissible.  And, the Court has found that the force employed on Plaintiff during his detention was not excessive or unreasonable in the circumstances.  For these reasons, Plaintiff's *Monell* claims fail as well.

> ### 4.  Intentional Infliction of Emotional Distress and Reckless Infliction of Emotional Distress (Counts Six and Seven).

Defendants argue that they are immune from liability in connection with all of the state law claims Plaintiff asserts.  In support of this assertion, the Defendants rely on Ohio Revised Code § 2744.  After a thorough review of the law, the record, and the Plaintiff's objections, the Court agrees with both the

---

[14]  The Magistrate Judge understandably did not believe that Plaintiff's excessive force claims had been asserted against either the individual defendants or the City under federal law.  As noted above, however, a liberal reading of the Complaint and of the materials submitted and arguments made by the Plaintiff in his opposition brief and objections to the R&R persuade the Court to analyze both categories of claims under federal law.

16

results reached, and rationale employed, by the Magistrate Judge in the R&R on these issues.  The Court agrees with the Magistrate Judge that no exception to the broad immunity afforded to the Defendants by O.R.C. § 2744 applies and that, as a result, Plaintiff "cannot overcome the City's assertion of immunity against his state law claims" for either the individual defendants or the City.

For the reasons discussed by the Magistrate Judge at pages 11-17 of the R&R, and those articulated above in connection with this Court's analysis of Plaintiff's excessive force claims, the Court concludes that Defendants are entitled to judgment as a matter of law on all of Plaintiff's state law claims.

**III.**     **CONCLUSION**

Plaintiff's Motion for Leave (Doc. 58) is **GRANTED** *nunc pro tunc* to the day it was filed. Defendants' Motion to Strike (Doc. 53) is **DENIED**.

For the reasons set forth above, as well as those outlined in the R&R, which the Court has adopted as its own, Defendants' Motion for Summary Judgment (Doc. 38) is **GRANTED**.  Plaintiff's case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

                                                          **s/Kathleen M. O'Malley**

**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  September 28, 2005**